```
                UNITED STATES DISTRICT COURT
                 MIDDLE DISTRICT OF FLORIDA
                       TAMPA DIVISION

BENTLEY MOTORS LIMITED
CORPORATION and BENTLEY
MOTOR, INC.,

        Plaintiffs,

v.                            Case No. 8:12-cv-1582-T-33TBM

MATTHEW McENTEGART, FUGAZZI
CARS, INC., ROBERT FRARY III,
and KEEPING IT REAL AUTO
CUSTOMIZING, INC.,

        Defendants.
_____/
```

**ORDER**

This matter comes before the Court in consideration of Plaintiffs Bentley Motors Limited Corporation and Bentley Motors, Inc.'s Motion for Final Default Judgment Against the Fugazzi Defendants (Doc. # 125), filed on December 17, 2013. For the reasons that follow, the Court grants the Motion to the extent detailed herein.

**I.   Background**

Bentley Motors Limited Corporation and Bentley Motors, Inc., collectively referred to herein as "Bentley," employ certain trademarks "in connection with the sale, distribution, maintenance, service, and repair of . . .

Bentley automobiles and related products and services." (Doc. # 1 at ¶ 26).

Defendant Matthew McEntegart is the owner and operator of Defendant Fugazzi Cars, Inc., a Florida corporation operating in St. Petersburg, Florida. (Doc. # 43 at 2). The Court refers to Fugazzi and McEntegart collectively as "the Fugazzi Defendants" herein. Defendant Robert Frary is the "president and CEO" of Defendant Keeping It Real Auto Customizing, Inc., a Florida corporation operating in Clearwater, Florida. (Id.; Frary Dep. Doc. # 94-4 at 1). The Court refers to Frary and Keeping It Real collectively as "the Frary Defendants" herein.

On July 16, 2012, Bentley initiated this action against Defendants for (1) trademark dilution pursuant to 15 U.S.C. § 1125(c); (2) trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1114(1); (3) false advertising, false designation of origin, and trade dress infringement pursuant to 15 U.S.C. § 1125(a); and (4) design patent infringement pursuant to 35 U.S.C. § 271. (Doc. # 1 at ¶¶ 39-64). Bentley alleged in its Verified Complaint that "Defendants unlawfully manufacture[d] Bentley body kits that transform ordinary and inexpensive Chrysler and Ford vehicles into knockoff Bentley vehicles," and "intentionally misappropriated the overall

2

appearance and shape of the Bentley GTC automobile, as well as [various Bentley] trademarks, . . . by incorporating them into 'Bentley Car Kits' . . . ." (Id. at ¶¶ 1-7).

On October 26, 2012, Bentley moved for a Clerk's entry of default against the Fugazzi Defendants, and on November 26, 2012, the Clerk entered default against these Defendants pursuant to Federal Rule of Civil Procedure 55(a). (Doc. ## 55, 60). On December 18, 2012, Bentley filed a motion for default judgment against the Fugazzi Defendants. (Doc. # 71). On December 19, 2012, the Court held a hearing at which McEntegart stated his acquiescence to the entry of default judgment against him. (Doc. # 73).

Rather than granting Bentley's motion for default judgment at that time, the Court denied the motion without prejudice for consideration at a later stage of the litigation, noting that this action would remain pending between Bentley and the Frary Defendants. (Doc. # 75). Instead, the Court granted Bentley's request for a permanent injunction against the Fugazzi Defendants. (Id. at 4).

On September 30, 2013, this Court entered an Order (1) granting Bentley's motion for default judgment against the Fugazzi Defendants, (2) granting Bentley's motion for summary judgment against the Frary Defendants as to Bentley's claims

3

for (i) trademark infringement, (ii) trademark counterfeiting, (iii) trademark dilution, and (iv) false designation of origin, and (3) granting Bentley's request for a permanent injunction against the Frary Defendants. (Doc. # 113).

Within that Order the Court noted that, by virtue of their default, the Fugazzi Defendants are deemed to have admitted to the willfulness of their conduct as alleged by Bentley in the Complaint. (Id. at 53 n.5). However, the Court found that a genuine issue of fact remained regarding the willfulness of the Frary Defendants' conduct. (Id. at 54). In light of this remaining question of fact, the Court found that this case should proceed to a bench trial as scheduled, during the December 2013 trial term, for the purpose of resolving the remaining issue of willfulness as to the Frary Defendants. The Court additionally noted that, after resolving the willfulness issue, the Court would proceed to determine the appropriate award of damages in this case.

On December 13, 2013, four days before the scheduled trial date, Bentley filed a document entitled: "Bentley's Notice of Filing Stipulated Final Judgment Against Defendants Robert Frary III and Keeping It Real Customizing, Inc." (Doc.

4

# 122). Bentley appended to the Notice a copy of the Stipulated Final Judgment signed by counsel for Bentley, counsel for the Frary Defendants, and Robert Frary, both for himself and for Keeping It Real Customizing, Inc. (Doc. # 122 at 5). The Court immediately entered an Order canceling the bench trial in light of Bentley's Notice. (Doc. # 123). The Court additionally directed Bentley to file, on or before December 17, 2013, a motion for final default judgment as to the remaining Defendants in order to facilitate a complete resolution of this matter.

On December 16, 2013, Frary filed a Suggestion of Bankruptcy under Chapter 13 of the Bankruptcy Code. (Doc. # 124). As noted in the Suggestion of Bankruptcy, "[p]ursuant to 11 U.S.C. Section 362(a), Bankruptcy Code, the filing of the Petition operates as a stay of the commencement or continuation of these proceedings" against the debtor. (Id. at 2). The next day, on December 17, 2013, Bentley filed its Motion for Final Default Judgment against the Fugazzi Defendants. (Doc. # 125). The Court has reviewed the Motion for Final Default Judgment and is otherwise fully advised in the premises.

**II.  Discussion**

    **A.  Final Judgment Against the Fugazzi Defendants**

5

As noted above, the Court previously granted Bentley's motion for default judgment against the Fugazzi Defendants, but reserved its determination as to the appropriate award of damages until after the previously-scheduled bench trial. (Doc. # 113 at 53-54). In doing so, the Court noted that "[a]lthough well-pleaded facts in a complaint are deemed admitted, a plaintiff's allegations relating to the amount of damages are not admitted by virtue of default; rather, the Court must determine both the amount and character of damages." (Id. at 52 n.4) (citing Miller v. Paradise of Port Richey, Inc., 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999)).

At this juncture, Bentley seeks the Court's determination of damages and the entry of a final judgment against the Fugazzi Defendants. Pursuant to Federal Rule of Civil Procedure 54(b), "the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." ABS-SOS Plus Partners. Ltd. v. Vein Assoc. of Am., Inc., No. 6:08-cv-1409-Orl-31DAB, 2008 WL 5191701, at *3 (M.D. Fla. Dec. 10, 2008).

In this case, the automatic bankruptcy stay effective against Frary as of December 16, 2013, prevents the Court

6

from proceeding to enter a final judgment against that Defendant despite Bentley's December 13, 2013, Notice of Stipulated Final Judgment. However, the Court determines that the issuance of a final default judgment against the Fugazzi Defendants is nonetheless appropriate at this late juncture of the proceedings.

Notably, McEntegart is also a debtor in ongoing bankruptcy proceedings. However, as the Court recognized in its September 30, 2013, Order: "On September 4, 2012, the bankruptcy court granted Bentley's motion for relief from the automatic bankruptcy stay under 11 U.S.C. § 362 for the purpose of proceeding in this action against Defendant McEntegart." (Doc. # 113 at 53 n.6). Thus, Bentley's ability to enforce any monetary judgment entered against McEntegart in this action is subject to the terms imposed by the United States Bankruptcy Court, Middle District of Florida, where McEntegart's bankruptcy case, No. 8:12-bk-12774-MGW, has been pending during the course of this litigation. (See Doc. # 57-2). Bentley has not notified the Court of any similar order granting relief from the bankruptcy stay as to Robert Frary.

### B. Amount of Damages

"Although a defaulted defendant admits well-pleaded

7

allegations of liability, allegations relating to the amount of damages are not admitted by virtue of default. Rather, the Court determines the amount and character of damages to be awarded." Automobil Lamborghini SpA v. Lamboshop, Inc., No. 2:07-cv-266-JES-SPC, 2008 WL 2743647, at *2 (M.D. Fla. June 5, 2008) (internal quotation marks omitted). "If a default judgment is warranted, the court may hold a hearing for the purpose[ ] of assessing damages. However, a hearing is not necessary if sufficient evidence is submitted to support the request for damages." Id. (internal citations omitted). The Court finds a hearing unnecessary to determine the appropriate amount of damages against the Fugazzi Defendants because (1) the Court has sufficient record evidence to properly determine damages without a hearing, and (2) Bentley's requested damages are statutory.

The Lanham Act allows a plaintiff to elect to receive statutory damages for a defendant's infringement of a plaintiff's trademarks. See 15 U.S.C. § 1117(c). Generally, upon a plaintiff's election to receive statutory damages instead of actual damages, the Court can award statutory damages of not less than $1,000 or more than $200,000 per trademark infringed per type of goods sold, offered for sale, or distributed, regardless of willfulness, "as the Court

8

determines to be just." Rolex Watch USA, Inc. v. Lynch, No. 2:12-cv-542, 2013 WL 2897939, at *5 (M.D. Fla. June 12, 2013) (citing 15 U.S.C. § 1117(c)(1)). However, statutory damages may be increased to not more than $2,000,000 per trademark infringed per type of goods sold, offered for sale, or distributed, if a defendant acts willfully. Id. (citing 15 U.S.C. § 1117(c)(2)).

In addition to the presumption raised by the Fugazzi Defendants' default,[1] Bentley has offered abundant evidence demonstrating that the Fugazzi Defendants' infringement was willful. Indeed, the Court finds, as did the Court in Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010), "it would be difficult for the court to conclude that the infringements were anything but willful." The production and online marketing of the Fugazzi Defendants' kit cars bearing Bentley marks demonstrate the Defendants' intent "to trade off the reputation and good will that the plaintiffs . . . have established." Id.

Bentley seeks an award of $1,000,000 against the Fugazzi Defendants, "calculated based on [defendant]'s counterfeiting

---

[1] See PetMed Express, Inc. v. MedPets.com, Inc., 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004) ("[T]he Court may infer willfulness from Defendants' default.").

9

of the B IN WINGS® (U.S. Reg. No. 0,344,524) in two separate products, to wit, the Fugazzi Defendants' 'turn-key' counterfeit Bentley Continental GTC automobiles and 'Bentley Car Kit' products." (Doc. # 125 at 6). Notably, this is the same amount as that specified in the Stipulated Final Judgment Against Defendants Robert Frary III and Keeping It Real Customizing, Inc. (Doc. # 122 at 3). However, beyond acknowledging that "this is the same statutory amount in the Stipulated Final Judgment against [the Frary Defendants]," (Doc. # 125 at 6 n.6), Bentley offers no legal analysis or explanation justifying an award of this amount. Instead, Bentley offers authority to support its general assertions that "district courts have wide discretion in awarding statutory damages," and "several courts have found statutory damages specially appropriate in default judgment cases due to infringer nondisclosure." (Id. at 7).

The Court finds Bentley's reasoning – that the Court should award $1,000,000 in statutory damages against the Fugazzi Defendants merely because this is the same amount to which the Frary Defendants agreed in their Stipulated Final Judgment – unconvincing. The extrajudicial settlement agreement between Bentley and the Frary Defendants does not impact the Court's ability to determine an appropriate award

of damages as to the defaulted Defendants in this trademark infringement action. The Frary Defendants are represented by counsel in this matter, as is Bentley, and the Court finds no indication that the agreement reached by those parties was procured by inappropriate means. Thus, rather than scrutinizing at this juncture the agreement between Bentley and the Frary Defendants, the Court will proceed to evaluate, independent of that agreement, Bentley's request for $1,000,000 in statutory damages against the Fugazzi Defendants.

As Bentley correctly contends within its Motion, "[d]istrict courts have wide discretion in awarding statutory damages." PetMed Express, 336 F. Supp. 2d at 1219. "The statutory damage provision, § 1117(c), was added in 1995 because 'counterfeit records are frequently nonexistent, inadequate, or deceptively kept . . . making proving actual damages in these cases extremely difficult if not impossible.'" Id. at 1219-20 (quoting Tiffany Inc. v. Luban, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003)).

Regarding the amount of damages for each trademark infringed, the Lanham Act "does not provide guidelines for courts to use in determining an appropriate award." Lynch, 2013 WL 2897939, at *5 (citations omitted). However, "[m]any

11

courts look to the Copyright Act's analogous provision, 17 U.S.C. § 504(c) in this situation." Id. Under the Copyright Act, courts consider factors such as: "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the copyright; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether a defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant." Id. (internal quotations and citations omitted); see also Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 852 (11th Cir. 1990) ("In its broad discretion for determining statutory damages, the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed.").

In determining an appropriate award of statutory damages, the Court must strike a balance between permitting a windfall for the plaintiff and emphasizing to the defendant "that the trademark laws and court proceedings are not mere incidental costs to doing business in the profitable counterfeit trade." Gucci America, 678 F. Supp. 2d at 122-23; see also Rolls-Royce PLC v. Rolls-Royce USA, Inc., 688 F.

12

Supp. 2d 150, 157 (E.D.N.Y. 2010) ("[W]hile it may exceed actual damages, an award of statutory damages does not constitute a windfall for prevailing plaintiffs. It does, however, serve a punitive, deterrent function.") (internal citations omitted).

The Court finds Bentley's request for $1,000,000 in statutory damages inappropriate in this case. As explained above, Bentley bases its request on the Fugazzi Defendants' infringement of Bentley's B IN WINGS® trademark registration with regard to the two types of goods sold or offered for sale: the Fugazzi Defendants' turn-key counterfeit Bentley Continental GTC automobiles and "Bentley Car Kit" products. Although the Court believes that an award at the minimum level would be insufficient here, some of the factors to be considered militate against an award near the maximum end of the spectrum.

For instance, with regard to the second factor, "the revenues lost by plaintiff," it is unlikely that the Defendants' use of Bentley's trademarks caused Bentley to suffer any lost revenue, as the Fugazzi Defendants consistently marketed the infringing products as replicas or kit cars. It is unlikely that a consumer intending to purchase an authentic Bentley could be easily persuaded to

13

purchase instead one of the Fugazzi Defendants' fiberglass replicas. Additionally, with regard to the first factor, the Court is unconvinced that the "profits reaped" by the Fugazzi Defendants total a number comparable to the $1,000,000 requested award. The Court achnowledges that Bentley estimated in its motion for preliminary injunction that Defendants produced "at least 30 fully built knockoff or imitation Bentley vehicles." (Doc. # 5 at 9). Furthermore, other evidence suggested that Defendants priced the "turn key" replicas anywhere between $17,000 and $35,000. (See Doc. # 32-7 at 2). However, the Court is not inclined to base a statutory award against only the Fugazzi Defendants on the maximum speculated total sales for all cars produced. This is not a case involving a large counterfeiting operation that would warrant a statutory award near the maximum end of the applicable range. See, e.g., Phillip Morris USA Inc. v. Marlboro Express, No. CV-03-1161, 2005 WL 2076921, at *6 (E.D.N.Y. Aug. 26, 2005) (finding a maximum statutory award of $1,000,000 per trademark for each of four infringed marks to be appropriate where "defendant's counterfeiting operation was large, involving at least 200,000 cartons and millions of cigarettes").

On the other hand, the Court is mindful that the Fugazzi Defendants have chosen to default rather than to cooperate in providing particular records from which to assess the value of the infringing items produced. Additionally, as explained above, the Court finds that the Fugazzi Defendants' infringing conduct was indeed willful. These considerations warrant an award above the statutory minimum.

After consulting numerous cases involving an award of damages for trademark infringement, the Court determines that an award of $250,000 per trademark infringed per type of good offered for sale, for a total amount of $500,000, adequately compensates Bentley in light of the relevant factors considered above. The Court finds that such an award also accomplishes the objectives underlying the following relevant factors: "the deterrent effect on others besides the defendants," and "the potential for discouraging the defendant." The Court is mindful that "[t]he statutory damages provision serves to sanction or punish defendants in order to deter future wrongful conduct." WFTV, Inc. v. Maverik Prod. Ltd. Liab. Co., No. 6:11-cv-1923, 2013 WL 3119461, at *13 (M.D. Fla. June 18, 2013)(citing St. Luke's Cataract & Laser Inst., P.A. v. Sanderson, 573 F.3d 1186, 1204-05 (11th Cir. 2009)). The Court is satisfied that

15

statutory damages in the amount of $250,000 per trademark per type of good offered for sale, coupled with the injunctive relief previously ordered, will serve as a sufficient deterrent against any future wrongful conduct by the Fugazzi Defendants.

For comparison, the Court has consulted the following cases: Automobil Lamborghini SpA, 2008 WL 2743647, at *7 (finding a statutory damages award of $700,000, representing $350,000 per infringing mark, to be appropriate in a case of willful infringement)); Rolls-Royce PLC, 688 F. Supp. 2d at 159 (awarding $1,000,000 in statutory damages for willful infringement, representing $25,000 x 2 marks x 20 types of goods); Rolex Watch USA, Inc. v. Lizaso-Rodriguez, No. 1:11-cv-23986, 2012 WL 1189768, at *4 (S.D. Fla. Apr. 9, 2012)(awarding a total of $350,000 representing $50,000 per trademark for each of seven trademarks infringed where conduct was intentional and willful); Lynch, 2013 WL 2897939, at *6 (awarding a total of $800,000 representing $100,000 per trademark for each of eight trademarks infringed); Malletier v. Carducci Leather Fashions, Inc., 648 F. Supp. 2d 501, 505 (S.D.N.Y. 2009) (awarding $100,000 for each of four trademarks infringed); Ford Motor Co. v. Cross, 441 F. Supp. 2d 837, 853 (E.D. Mich. 2006) (finding $100,000 to be an

appropriate statutory damages award in a case of willful trademark infringement); Gucci America, Inc. v. Tyrrell-Miller, 678 F. Supp. 2d 117, 122 (S.D.N.Y. 2008) (finding an award of "$3 million, or $200,000 per infringed mark . . . appropriate to accomplish the dual goals of compensation and deterrence").

Thus, based on the relevant factors discussed above and the circumstances of this case, the Court finds that statutory damages in the amount of $250,000 per trademark infringed per type of good offered for sale, for a total amount of $500,000, is an appropriate, just, and reasonable award.

### C. **Attorney Fees**

The Court declines to determine an appropriate amount of attorney fees at this juncture. If Bentley intends to file a motion for attorney fees in this matter, the Court directs Bentley to do so on or before February 17, 2014. Any such motion must be accompanied by a detailed fee ledger itemizing the hours worked in this case.

### III. **Stay Pending Resolution of Bankruptcy Proceedings**

Having determined that the entry of Final Default Judgment is proper as to the Fugazzi Defendants, the Court finds it appropriate to stay this case as to the Frary Defendants pending the resolution of the bankruptcy

17

proceedings involving Defendant Robert Frary. The Court recognizes that, although no suggestion of bankruptcy has been filed as to Defendant Keeping It Real Auto Customizing, Inc., the corporation is nonetheless a party to the Stipulated Final Judgment which remains unsigned by the Court. (Doc. # 122).

In addition to the requirement enumerated by 11 U.S.C. § 362(a) that the filing of a bankruptcy petition "operates as a stay . . . of the commencement or continuation . . . of a judicial . . . action or proceeding against the debtor," this Court is also mindful that it "has broad discretion to stay proceedings as an incident to its power to control its own docket." Clinton v. Jones, 520 U.S. 681, 706 (1997). Accordingly, the Court finds it appropriate to stay and administratively close this action between Bentley and both Frary Defendants pending the resolution of the bankruptcy proceedings involving Defendant Robert Frary. The Court directs the parties to file a joint status report on or before March 28, 2014, and every sixty days thereafter, advising the Court as to the status of the relevant bankruptcy proceedings.

Accordingly, it is

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) Plaintiffs' Motion for Final Default Judgment against the Fugazzi Defendants (Doc. # 125) is **GRANTED** to the extent detailed herein.

(2) The Clerk is directed to enter Judgment in favor of Plaintiffs and against Defendants Matthew McEntegart and Fugazzi Cars, Inc., in the amount of $500,000.

(3) If Plaintiffs intend to file a motion for attorney fees in this matter, Plaintiffs are directed to do so on or before February 17, 2014.  Any such motion must be accompanied by a detailed fee ledger itemizing the hours worked in this case.

(4) This case is **STAYED** and **ADMINISTRATIVELY CLOSED** as to Defendants Robert Frary, III and Keeping It Real Auto Customizing, Inc., pending the resolution of the bankruptcy proceedings involving Defendant Robert Frary. The Court directs the parties to file a joint status report on or before March 28, 2014, and every sixty days thereafter, advising the Court as to the status of the relevant bankruptcy proceedings.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>3rd</u> day of February, 2014.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: All Counsel and Parties of Record